**Reversed and Remanded and Majority and Dissenting Opinions filed July 10, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00227-CR

---

### LEONARDO AGUILAR, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1290892**

---

## MAJORITY OPINION

Appellant Leonardo Aguilar appeals from the trial court's denial of his application for writ of habeas corpus. Appellant, a foreign national, contends that his trial counsel in the underlying proceeding failed to apprise him of the adverse immigration consequences of a guilty plea, thus rendering his plea involuntary under *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). Following the dictates of that case, we reverse and remand for further proceedings.

## *Background*

In April 2005, appellant was charged with felony possession of less than a gram of cocaine. In October 2006, appellant pleaded guilty, and the charge was reduced to a class-A misdemeanor. As requested by the State, appellant was sentenced to ten days in jail and ordered to pay a five-hundred-dollar fine.

Appellant filed an application for writ of habeas corpus on December 21, 2010. In an affidavit presented to the court, appellant averred that his counsel in the cocaine possession case only told him that his guilty plea *could* result in deportation and failed to inform him that the plea would make deportation presumptively mandatory. Appellant further stated that if his counsel had told him that a guilty plea would make deportation presumptively mandatory, he would not have pleaded guilty and would have instead insisted on a trial. He said that residence in the United States was very important to him and was the most important thing to him in respect to the underlying case.

Charles Medlin, appellant's counsel in the underlying case, stated in his affidavit that it was his practice at the time to advise clients that a guilty plea could result in deportation, exclusion of admission, or denial of naturalization, as was also stated in the plea admonishments filed with the court.[1] Medlin further stated that he followed that practice in this case and did not tell appellant whether a guilty plea definitely would or would not have immigration consequences.

Appellant urged the court to grant habeas corpus relief on the ground that Medlin had provided ineffective assistance of counsel by failing to inform appellant that pleading guilty to possession of a controlled substance rendered his deportation presumptively mandatory. At the conclusion of a brief hearing, during which the two affidavits were admitted into evidence, the trial judge denied appellant's application. The judge stated

---

[1] The form plea admonishments contain the following language in paragraph 4: "CITIZENSHIP: If you are not a citizen of the United States of America, a plea of either Guilty or Nolo Contendre (No Contest) for this offense may result in your deportation, or your exclusion from admission to the country, or the denial of your naturalization under applicable federal law."

on the record that Medlin had sufficiently counseled appellant pursuant to prevailing professional norms.  Neither findings of fact nor conclusions of law were requested or filed.

### *Habeas Corpus Review*

We generally review a trial court's decision on an application for habeas corpus under an abuse of discretion standard of review.  *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011).  An applicant seeking post-conviction habeas corpus relief bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).  We consider the evidence presented in the light most favorable to the habeas court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).  This deferential review applies even when the trial court's findings are implied rather than explicit and based on affidavits rather than live testimony.  *Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006); *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo.  *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds, Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

### *Guilty Pleas, Ineffective Assistance Claims* & **Padilla**

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  The two-pronged *Strickland v. Washington* test applies to challenges to guilty pleas, such as the one in the present case, premised on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  Under *Strickland*, in order to demonstrate ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness; second, a defendant must affirmatively prove prejudice by

3

showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 687-88, 694; *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. In order to satisfy the prejudice prong in a guilty plea case, a defendant or habeas corpus applicant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

In *Padilla*, the Supreme Court addressed the application of these principles where the voluntariness of a guilty plea is brought into question because a defendant's counsel failed to apprise him or her of the immigration consequences of the plea. 130 S. Ct. 1473. The court determined that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id*. at 1481-82. After reviewing historical developments in immigration law, the court concluded that under current law, "if a noncitizen has committed a removable offense . . . his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Id*. at 1480. Moreover, preserving the opportunity to remain in the United States might be a more important consideration to a particular defendant in considering a plea offer than the possibility of incarceration. *Id*. at 1484.

Regarding the advice required of counsel when presented with possible immigration consequences from a guilty plea, the Court acknowledged immigration issues can be complex and indicated that the certainty of the advice could fluctuate depending on the certainty of the adverse immigration consequences. *Id*. at 1483.[2]

---

[2] The Court stated that it "agree[d] with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Padilla*, 130 S.Ct. at 1478. The Court later explained that the terms of the immigration statute under which Padilla himself fell were "succinct, clear, and explicit" and thus "his deportation was presumptively mandatory." *Id*. at 1483. The Court further noted, however, that:

[t]here will . . . undoubtedly be numerous situations in which the deportation

4

Although the *Padilla* Court did not reach the prejudice prong of the *Strickland* test, as such was not before the Court in that appeal, it did note that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id*. at 1485.

## Padilla *Applies Retroactively*

Because appellant's conviction occurred before the Supreme Court issued its opinion in *Padilla*, we must first determine whether that opinion should be applied retroactively in collateral proceedings such at this habeas corpus action. Neither the Supreme Court, the Texas Court of Criminal Appeals, nor this court has addressed this issue. Two of our sister courts, the El Paso Court of Appeals and the First Court of Appeals, as well as a number of courts from other jurisdictions, have determined that *Padilla* should apply retroactively. *See Ex parte De Los Reyes*, 350 S.W.3d 723, 728-29 (Tex. App.—El Paso 2011, pet. granted); *Ex parte Tanklevskaya*, 361 S.W.3d 86, 93-95 (Tex. App.—Houston [1st Dist.] 2011, pet. filed); *see also United States v. Orocio*, 645 F.3d 630, 641 (3d Cir. 2011); *McNeill v. United States*, No. A–11–CA495 SS, 2012 WL 369471, at *3 (W.D. Tex. Feb. 2, 2012). Other courts in other jurisdictions have disagreed, holding that *Padilla* does not apply retroactively. *See, e.g., Chaidez v. United States*, 655 F.3d 684, 694 (7th Cir.2011), *cert. granted*, 80 U.S.L.W. 3429 (U.S. Apr. 30, 2012) (No. 11-820); *United States v. Hong*, 671 F.3d 1147, 1150-59 (10th Cir. 2011). For the reasons stated in the former set of opinions and discussed below, we agree with our sister courts and the other courts holding *Padilla* applies retroactively.[3]

---

consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id*.

[3] As noted, the United States Supreme Court has granted certiorari in *Chaidez*, and the Court of Criminal Appeals has granted the petition for discretionary review in *De Los Reyes*. However, we do not wait on the higher courts to issue their opinions. *See generally* Tex. R. App. P. 31.2 ("An appeal in a

The Court of Criminal Appeals has adopted the United States Supreme Court's analysis in *Teague v. Lane*, 489 U.S. 288 (1989) to determine whether a rule of law applies retroactively in Texas habeas corpus proceedings. *E.g., Ex parte Lave*, 257 S.W.3d 235, 236-7 (Tex. Crim. App. 2008). The threshold issue under *Teague* is whether the rule in question is a "new rule" or an "old rule." With two stated exceptions, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *See Teague*, 489 U.S. at 310.[4] A rule is considered "new" if it "breaks new ground," "imposes a new obligation on the States or the Federal Government," or was not "dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (emphasis omitted); *see also Graham v. Collins*, 506 U.S. 461, 467 (1993). "Old rules" are applicable on both direct and collateral review. *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (holding *Crawford v. Washington*, 541 U.S. 36 (2004), announced a new rule not applicable in habeas corpus proceeding because it was not dictated by precedent and was "flatly inconsistent with the prior governing precedent").

As the split in authority suggests, the question of whether *Padilla* should be applied retroactively, pursuant to *Teague*, is a very close call. The key issue in *Padilla* was whether Padilla's counsel had performed deficiently as assessed under the first prong of the *Strickland* test. *Padilla*, 130 S. Ct. at 1482. In addressing the issue, the *Padilla* majority grounded its determination firmly in past precedent, particularly *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and progeny (holding a defendant is entitled to the effective assistance of competent counsel in deciding whether to plead guilty); *Strickland* and progeny (providing rules governing the ineffective assistance of counsel analysis); and *I.N.S. v. St. Cyr*, 533 U.S. 289, 323 (2001) (recognizing the potentially paramount importance noncitizen clients might attach to remaining in the United States). *Padilla*,

---

habeas corpus . . . proceeding will be heard at the earliest practicable time.").

[4] Although not applicable here, a new rule falls within the *Teague* exceptions if it: (1) places certain kinds of conduct beyond the power of the criminal law-making authority to proscribe or (2) constitutes a watershed rule change implicating the fundamental fairness of the trial. *See Danforth v. Minnesota*, 552 U.S. 264, 274-75 (2008) (citing *Teague*, 489 U.S. at 311, 312, 313).

130 S. Ct. at 1480-87.[5] Moreover, *Padilla* did not overturn any prior precedent of the Court. *See Hong*, 671 F.3d at 1155.

Because of this, several courts have concluded that the majority in *Padilla* did not announce a "new rule," as defined by *Teague*, but was simply applying existing precedent to particular facts or context regarding which the Supreme Court had not previously, explicitly spoken. *See, e.g., Orocio*, 645 F.3d at 639-41 ("*Padilla* followed from the clearly established principles of the guarantee of effective assistance of counsel."); *Tanklevskaya*, 361 S.W.3d at 93-94 (discussing analyses of other courts); *see also Lewis v. Johnson*, 359 F.3d 646, 655 (3d Cir. 2004) (explaining that because the *Strickland* test necessarily requires a case-by-case examination of particular circumstances, application of that test should be deemed to create a "new rule" only when it is truly novel) (citing *Wright v. West*, 505 U.S. 277, 305 (1992) (Kennedy, J., concurring in judgment)). In the terminology of *Teague* itself, *Padilla* did not "break new ground" or "impose a new obligation on the States or the Federal Government," and was "dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301.

Many of the courts holding that *Padilla* does not apply retroactively rely heavily upon the *Padilla* concurrence by Justice Alito and the dissent by Justice Scalia for their interpretations of the *Padilla* majority. *See, e.g., Chaidez*, 655 F.3d at 689 ("That the members of the *Padilla* Court expressed such an 'array of views' indicates that *Padilla* was not dictated by precedent."); *Hong*, 671 F.3d at 1154-56 ("We take the concurrence and dissent as support for our conclusion that reasonable jurists did not find the rule in *Padilla* compelled or dictated by the Court's prior precedent."). Justice Alito described the majority as engaging in a "dramatic departure from precedent," and Justice Scalia

---

[5] The *Padilla* majority further downplayed the nature of the rule it was announcing by pointing out that for at least 15 years preceding the opinion, professional norms had imposed an obligation on counsel to provide advice regarding the deportation consequences of a guilty plea. 130 S. Ct. at 1483-85 (citing numerous practice guides). Additionally, the majority appeared to anticipate its rule being applied retroactively in habeas corpus proceedings when it analyzed the infrequent use of collateral proceedings to challenge guilty pleas under *Strickland*. *Padilla*, 130 S. Ct. at 1485-86.

likewise decried the majority's extension of rights under the Sixth Amendment. *Padilla*, 130 S. Ct. at 1491 (Alito, J., concurring in judgment); *id.* at 1494-95 (Scalia, J., dissenting).

However, in light of the majority's assurance that its decision was dictated by prior precedent—*McMann*, *Strickland*, *St. Cyr*, etc.—it seems the wiser course is to interpret the majority opinion as the majority has instructed. For this and the other reasons stated above, we join those courts that have applied *Padilla* retroactively.

### *Deficiency of Performance*

To satisfy the first prong of *Strickland*, a defendant, or habeas corpus applicant, must show that counsel's performance was deficient, *i.e.*, fell below an objective standard of reasonableness. 466 U.S. at 687-88. Both appellant and his former counsel stated in their affidavits that counsel told appellant that a guilty plea to the cocaine possession charge *could* result in deportation and failed to inform him that the plea would make deportation presumptively mandatory.

In its brief, the State argues that appellant's deportation was, in fact, not presumptively mandatory, and therefore, counsel did not provide deficient advice to appellant. The federal immigration statutory provision at issue in this case, 8 U.S.C. § 1227(a)(2)(B)(i), is the exact same provision that the Supreme Court described as "presumptively mandatory" in *Padilla*. 130 S. Ct. at 1483. That statute provides as follows: "Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . is deportable. " 8 U.S.C. § 1227(a)(2)(B)(i). The Supreme Court further described the provision as "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Padilla*, 130 S.Ct. at 1483. In light of this clarity, the Court "agree[d] with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id*. at 1478. The Court further explained that when the law is not so clear, "a criminal defense attorney need do no more than advise a noncitizen client that pending

8

criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id*. at 1483.

Thus, under *Padilla*, "[a] criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) (emphasis in original); *Tanklevskaya*, 361 S.W.3d at 96. Here, counsel undisputedly only mentioned the possibility of deportation to appellant, despite the presumptively mandatory nature of the applicable immigration provision. Consequently, *Padilla* mandates that counsel's performance be deemed deficient.

The State argues that the effect of the statutory provision is not as clear as the Supreme Court indicated, due to the discretion afforded to immigration officials to selectively prosecute deportation cases. Specifically, the State cites an internal memorandum issued by the Director of Immigration and Custom Enforcement, discussing various factors applicable "to a broad range of discretionary enforcement decisions," as well as several cases discussing prosecutorial discretion in immigration matters. *See Cardoso v. Reno*, 216 F.3d 512, 517 (5th Cir. 2000); *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999); *State v. Golding*, No. 01-10-00685-CR, 2011 WL 1835274, at *5 (Tex. App.—Houston [1st Dist;] May 12, 2011), *rehearing granted*, *opinion withdrawn*, 2011 WL 2732579, at *1 (Tex. App.—Houston [1st Dist.] July 14, 2011, pet. ref'd); Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, to All Field Office Directors, All Special Agents in Charge, All Chief Counsel (June 17, 2011) ("Subject: Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens").[6]

None of these documents, however, contradict the Supreme Court's

---

[6] The memorandum can be viewed on the internet at: http://www.jdsupra.com/post/documentViewer.aspx?fid=f36c5a91-4913-4f5a-92e1-3ab7ba72db4a.

pronouncements in *Padilla*. The memorandum in particular does not even mention the provision at issue in *Padilla* and in the present case: 8 U.S.C. § 1227(a)(2)(B)(i). Moreover, as both the memorandum and the cited cases indicate, the concept of prosecutorial discretion in immigration matters is nothing new. *See, e.g., Alvidres-Reyes*, 180 F.3d at 201 (describing the United States Attorney General as having "long-established discretion to decide whether and when to prosecute . . . removal proceedings"). The memorandum lists and references multiple prior memoranda on the same topic, several of which preceded *Padilla* by as much as 34 years. Several of the cited cases likewise preceded *Padilla*. *See Cardoso*, 216 F.3d 512; *Alvidres-Reyes*, 180 F.3d 199. Moreover, the *Padilla* majority explicitly considered the role of prosecutorial discretion in its analysis. 130 S.Ct. at 1480. Consequently, the existence of prosecutorial discretion in immigration cases does not persuade us to reject the Supreme Court's holdings in *Padilla*. We remain bound by the Supreme Court's precedent in this matter.

## *Prejudice*

Deficient performance alone, however, does not demonstrate ineffective assistance of counsel under *Strickland*. The defendant or habeas corpus applicant also must demonstrate prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. Specifically in the guilty plea context, the defendant or applicant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The *Padilla* court further emphasized that "to obtain relief . . . a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." 130 S. Ct. at 1485.[7] Furthermore, a court should consider the gravity of the deficient performance as well as the circumstances surrounding the guilty plea in determining whether advice the defendant received or

---

[7] The *Padilla* court, however, did not otherwise provide guidance on application of the prejudice prong in these types of cases as that particular issue had not been ruled upon by the lower courts in *Padilla*; instead, the Court remanded for further proceedings. 130 S. Ct. at 1487.

failed to receive impacted the decision. *See Ex parte Moody*, 991 S.W.3d 856, 858 (Tex. Crim. App. 1999) (holding applicant established prejudice based on applicant's own testimony and that of his plea counsel). *Compare Tanklevskaya*, 361 S.W.3d at 97 (holding applicant's testimony was alone sufficient to establish prejudice), *with Jackson v. State*, 139 S.W.3d 7, 21 n.10 (Tex. App.—Fort Worth 2004, pet. ref'd) (stating in dicta that affidavit alone was insufficient to demonstrate prejudice).

Here, the record is only marginally developed regarding the alleged prejudice. Appellant stated in his affidavit that if his counsel had told him his guilty plea would make deportation presumptively likely, he would not have pleaded guilty and would have instead insisted on going to trial. He said that residence in the United States was very important to him and was the most important thing to him in respect to the underlying case. Appellant did not provide live testimony or any specific evidence regarding the rationality of rejecting a plea bargain under the circumstances (apparently relying solely on his stance that he would have rejected the plea because residence was of paramount importance to him). The State did not provide any rebuttal evidence regarding prejudice.[8]

We further note that, in making her ruling, the trial judge did not need to consider the prejudice prong; thus, she cannot be said to have accepted or rejected appellant's affidavit statements. *See generally Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006) (explaining that an appellate court in a habeas corpus appeal must defer to a trial court's factual findings even when based on affidavits). At the conclusion of the habeas corpus hearing, the judge stated that "the existing professional norms were, in

---

[8] Neither party in this case presented any evidence or made any representation in the trial court regarding whether appellant was subject to any pending immigration proceedings. In the vast majority of *Padilla*-related habeas corpus cases reported thus far, the applicant was the subject of ongoing deportation or other immigration proceedings. Here, the record is silent on this issue. Courts in New York have held that in the absence of ongoing proceedings, a defendant could not establish prejudice due to deficient plea advice. *See People v. Floyd F.*, No. 94K053487, 2012 WL 1414943 at *9-10 (N.Y. Crim. Ct. Apr. 13, 2012) (discussing cases). However, since the relevant inquiry is not whether a defendant has suffered adverse consequences but whether he or she would not have pleaded guilty, it would not appear that the existence of ongoing adverse proceedings is a necessary component for an ineffective assistance claim in the *Padilla* context. *See Hill*, 474 U.S. at 59.

fact, met by Mr. Medlin in advising [appellant] that a plea of guilty or no contest may result in . . . deportation . . . .  So I'm denying your writ."

The "sole purpose" of a habeas corpus appeal "is to do substantial justice to the parties."  Tex. R. App. P. 31.2.  Additionally, we are authorized to remand a case if further proceedings are necessary or in the interests of justice.  Tex. R. App. P. 43.3.  Because (1) this is a developing area of law, (2) the record is only marginally developed regarding the prejudice prong of *Strickland*, and (3) the trial court clearly did not rule on the prejudice prong, we sustain appellant's sole issue and remand this case for a determination by the trial court on the prejudice prong of *Strickland*.  *See Padilla*, 130 S. Ct. at 1487 (remanding for lower court's consideration of prejudice prong).

/s/      Martha Hill Jamison
Justice

Panel consists of Justices Frost, Seymore, and Jamison (Frost, J., dissenting).
Publish — Tex. R. App. P. 47.2(b).

12