**Affirmed and Memorandum Opinion filed December 28, 2012.**



In The

# Fourteenth Court of Appeals

_____

**NO. 14-11-00730-CR**
**NO. 14-11-00828-CR**

_____

**CARLOS HERNANDEZ-MUNOZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 10CR1592 & 10CR2083**

## MEMORANDUM OPINION

Appellant, Carlos Hernandez-Munoz, appeals the trial court's denial of his motion for a new trial. Relying on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), appellant contends that he received ineffective assistance of counsel in connection with his pleas of guilty to two counts of aggravated assault. We disagree and affirm.

**BACKGROUND**

Sometime between 2000 and 2002, appellant immigrated to the United States from El Salvador, and the United States granted him asylum. *See* 8 U.S.C. § 1158 (2006). Asylum is available only to immigrants who are "unable or unwilling to return . . . [to their home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A) (2006). Appellant testified that he received asylum because his family's involvement in gang conflicts made remaining in El Salvador too dangerous.

When appellant first received asylum, he claims that an immigration official told him that "no matter what [he] did, [he was] never going to be deported."[1] Since that time, appellant has committed several crimes, including multiple assaults, that resulted in either four or five encounters with immigration authorities. Each time, the federal government permitted him to remain in this country.

On May 26, 2010, appellant committed the assaults that gave rise to this case. The victim initially alleged that appellant stabbed her in the arm when she refused to give him money for drugs and, minutes later, pushed her to the ground, bit off part of her lower lip, and spit it at her. She made this allegation to at least

---

[1] This advice, if appellant actually received it, appears to be incorrect. When an immigrant who has been granted asylum commits an "aggravated felony," as defined by immigration law, the Attorney General may terminate the immigrant's asylum and deport him. *See* 8 U.S.C. § 1158(b)(2)(A)(ii) (alien ineligible for asylum if convicted of a particularly serious crime), (b)(2)(B)(i) ("[A]n alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime."), (c)(2)(B) (asylum may be terminated if alien meets a condition in subparagraph (b)(2)), (c)(3) ("An alien described in paragraph [(c)](2) is subject to any applicable grounds of . . . deportability . . . .").

four people, but would later claim that appellant bit off her lip accidentally and that she could not recall how she injured her arm.

Appellant ultimately pled guilty to first-degree assault for biting the victim's lip and second-degree assault for cutting her arm. The charges received separate docket numbers in the trial court and have been docketed separately here, but this opinion addresses both charges. During plea negotiations, the prosecutor offered appellant a sentence of twelve years' confinement if he pled guilty. Appellant did not want to go to prison, however, and repeatedly refused the offer. Appellant's trial counsel also worried about such a sentence's immigration consequences. Trial counsel researched the immigration law, and "[e]verything that [she] looked at . . . basically gave [appellant] no chance [of avoiding deportation] with an aggravated assault." As a result, trial counsel testified that she told appellant that "he most certainly was going to be deported" and that "[she] did not see any way that he was not going to be deported." They had this discussion "at least ten times."

Trial counsel also testified, however, that two continuing legal education instructors told her a sentence of "five years or less than five years" would increase appellant's chances of avoiding deportation. This advice led trial counsel to believe that there existed "a chance, a very small possibility" that "if a jury . . . decided to give [appellant] probation . . . that could possibly put him in the best situation possible when immigration was looking at him."

Trial counsel never found legal support for the conclusion that probation was a preferable outcome, but she did communicate this advice to appellant. She added "the caveat that [she] was not an immigration specialized attorney" and referred appellant to a specialist advertising $150 or $250 consultations. Appellant would

3

later testify that he never contacted the specialist because he "wanted to deal with this case and then worry about the immigration issue later."

Trial counsel believed that appellant had no chance of winning at trial and attempted to negotiate a sentence of fewer than five years' confinement or probation. The prosecutor refused to reduce his twelve-year offer. Wishing to secure a better sentence, trial counsel and appellant decided "to go for an open plea and . . . hope that the jury . . . might even grant probation." The strategy was that "a jury could consider not punishing [appellant] as harshly if he admitted his guilt as opposed to him saying 'I don't know how that happened.'" Appellant pled guilty to both charges and a jury sentenced him to concurrent sentences of thirty and twenty years, respectively, for the first- and second-degree assaults.

Appellant then retained new counsel and moved for a new trial. His new lawyer argued that appellant's pleas were ineffectively counseled because trial counsel misadvised appellant of the pleas' immigration consequences. New counsel contended that, even if appellant had received probation, appellant's convictions made deportation inevitable, and trial counsel's failure to so advise him was ineffective assistance.

At a hearing on his new trial motion, when asked whether he believed he would be deported, appellant said: "I believe that now [i.e., even after pleading guilty to these charges] they can't send me back but at the same time might . . . because I'm not from here." The trial court denied appellant's motion without making findings, and this appeal followed.

## ANALYSIS

The questions in this case are (1) whether appellant's trial counsel effectively advised him of his pleas' immigration consequences;[2] and (2) to the extent trial counsel's advice was ineffective, whether effective assistance would have altered the proceedings' result. *See Padilla*, 130 S. Ct. at 1482. We conclude that, even if we assume trial counsel's assistance was ineffective, the record supports the trial court's implied finding that appellant would have pled guilty even if effectively advised.

---

[2] Appellant's brief alleges several mistakes by trial counsel unrelated to advising appellant of his pleas' likely immigration consequences, but concedes "most of" these mistakes were "probably ultimately harmless." The brief fails to explain which, if any, of these other mistakes may have been harmful or why. The specific errors appellant references are that trial counsel: (1) incorrectly described the offense of aggravated perjury, *see* Tex. Penal Code Ann. § 37.03 (West 2011); (2) appeared confused during appellant's plea as to whether the judge or jury could impose community supervision, *see* Tex. Code Crim. Proc. Ann. art. 42.12 §§ 3, 4 (West 2012); (3) testified at the new trial hearing that a jury could have deferred adjudication of appellant's charges when it could not have, *see* Tex. Code Crim. Proc. Ann. art. 42.12 § 5 (West 2012); and (4) inquired about a presentence investigation report at appellant's plea hearing even though such reports are unnecessary when a jury determines punishment, *see* Tex. Code Crim. Proc. Ann. art. 42.12 § 9 (West 2012).

Appellant contends that these missteps "lend[ ] further credibility to [appellant's] claim that [trial counsel] misrepresented . . . what his possibilities for deportation were if he pled guilty," and that "consider[ing] [these] . . . misunderstandings about Texas criminal law" "might help" us "decid[e] whether to give [trial counsel] the benefit of the doubt on questions like exactly what she told [appellant] about his deportation situation." Although appellant asks that we evaluate witness credibility in light of trial counsel's mistakes, "we cannot, on appeal, weigh the credibility of the witnesses." *Leadon v. State*, 332 S.W.3d 600, 608 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Such determinations are factual, and in the absence of explicit findings, we must "infer[ ] the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

## I. Standard of review

We review a trial court's decision to grant or deny a new trial for an abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). Under this standard, an appellate court should uphold a trial judge's ruling unless it is outside the zone of reasonable disagreement. *Hall v. State*, 283 S.W.3d 137, 165 (Tex. App.—Austin 2009, pet. ref'd). We afford almost total deference to any explicit written or oral fact findings by the district court based on an evaluation of credibility and demeanor. *Id.* In the absence of such findings, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id.*

## II. The trial court did not abuse its discretion in denying the motion for new trial.

A two-pronged test applies to plea challenges premised upon ineffective assistance of counsel. *Aguilar v. State*, 375 S.W.3d 518, 521 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). To demonstrate ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient, i.e., that the assistance fell below an objective standard of reasonableness. *Id.* Second, a defendant must affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

### A. *This Court need not decide the issue of deficient performance.*

We begin with a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Lopez v. State*, 343 S.W.3d

137, 142 (Tex. Crim. App. 2011). To find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; we will not engage in retrospective speculation. *Id.* In making an assessment of effective assistance of counsel, we review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Id.* at 143.

In *Padilla,* the Supreme Court applied ineffective-assistance principles to an individual who argued that his guilty plea was involuntary because his lawyer inaccurately advised him of the plea's immigration consequences. 130 S. Ct. at 1478. The Court determined that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1482. It held that, because the terms of the statute rendering the individual deportable were "succinct, clear, and explicit" and his plea counsel's advice was inaccurate, counsel was constitutionally ineffective. *Id.* at 1483. But the Court did not limit its holding to inaccurate advice. Instead it announced the following rule:

> When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.*

Appellant argues his trial counsel was ineffective because she inaccurately advised him that a sentence of probation would avoid deportation when, in fact, conviction guaranteed appellant's deportation regardless of the sentence he received.

We need not decide, however, whether trial counsel's performance was deficient. Instead, even assuming that trial counsel misadvised appellant as he contends, we conclude, based upon our review of the trial court's implied findings,

7

that appellant failed to prove the prejudice requirement of an ineffective assistance claim. *See Strickland v. Washington,* 466 U.S. 668, 697 (1984) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

### B. *Appellant did not prove prejudice.*

To demonstrate prejudice, a defendant or habeas corpus applicant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. Thus, in the guilty plea context, the defendant or applicant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485. In reviewing a finding of this nature, our role is "to determine whether any reasonable view of the record, viewed in the light most favorable to the trial court's ruling, could support the trial court's implicit findings." *Riley v. State*, 378 S.W.3d 453, 459 (Tex. Crim. App. 2012).

Appellant argues that he established prejudice because he testified that "[i]f [he] had the chance to do this all over again knowing everything that [he] [did at the new trial hearing]," he would have pled not guilty. We disagree because there is evidence supporting the trial court's implied rejection of appellant's self-serving testimony.

We begin by noting that, in general, "the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from

8

imprisonment."[3]  8 U.S.C. § 1231(a)(4)(A) (2006).  As a result, when an immigrant defendant's chances for acquittal are slim, his best option—even if deportation is certain—will often be a strategy that minimizes the duration of his incarceration.

Thus, assuming appellant faced certain deportation if convicted, an open plea was still a rational trial strategy for reducing his prison term.  The State had a strong case.  Although the alleged victim would eventually testify that appellant accidentally inflicted her injuries, she had previously stated several times— including in a sworn statement to police—that appellant injured her intentionally.  In any event, the State could have proven its case by demonstrating that appellant acted recklessly, a theory that the victim's testimony supported.  *See* Tex. Penal Code § 22.01(a)(1) (West 2011).  Moreover, appellant himself was recorded making inculpatory statements, which very likely would have been used against him at trial.  Finally, gruesome photographs depicted the victim missing a portion of her bottom lip.  The record shows that this injury, by its nature, appeared unlikely to be accidental.  Given this evidence, trial counsel testified that her "best analysis" was that "there was no way [appellant] was not going to be found guilty."

Appellant also wanted to avoid prison, an outcome that appeared unlikely if he lost at trial.  Multiple prior convictions appeared in appellant's criminal record.  The level of violence in which he engaged had steadily escalated.  Disclaiming responsibility for this assault might have demonstrated to the jury or sentencing judge that appellant was unwilling to address his increasingly violent behavior.

---

[3] Exceptions to this general rule exist for certain nonviolent offenders, *see* 8 U.S.C. § 1231(a)(4)(B) (2006), but are seldom used.  *See generally* Peter H. Schuck, *Immigrant Criminals in Overcrowded Prisons: Rethinking an Anachronistic Policy* 53–54, app. 3 (Yale Law School, Public Law Working Paper No. 266) *available at* http://ssrn.com/abstract=1805931 (discussing infrequency of deportation in lieu incarceration and collecting data in appendix).

These reasons for pleading guilty to reduce or avoid prison time were all the more compelling because of appellant's strong mitigation evidence. Appellant had endured trauma as a child in gang-ravaged El Salvador, and his adult criminal history demonstrated that he struggled with addiction. The strength of this evidence might well have been reduced, however, had it been elicited only after appellant denied any wrongdoing. By entering an open plea, appellant made his first impression on the jury one of remorsefulness rather than recalcitrance, and thereby used his mitigation evidence to its best effect. *Cf. Hathorn v. State*, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992) ("[D]efense counsel's conduct in conceding appellant's guilt in an apparent attempt to get the jury to find appellant guilty of a lesser offense can reasonably be explained as trial tactic.")

Thus, appellant's open-plea strategy would have been rational even with the knowledge that, no matter the outcome, he would certainly be deported. The question, then, is this: would appellant have rejected this otherwise-reasonable strategy but for trial counsel's advice that there also existed "a very small possibility" of avoiding deportation if he pursued the open-plea strategy and received probation?

For at least two reasons, the evidence supports the trial court's implied finding that appellant would not have changed course even if he had known that the "very small possibility" to which trial counsel referred did not exist. First, because the margin between the inaccurate advice appellant actually received and entirely accurate advice was so narrow, the trial court could have found that there was no reasonable probability that entirely correct advice would have altered appellant's behavior. Given the soundness of trial counsel's strategy, the evidence supported this conclusion.

Second, appellant's behavior and testimony supported the conclusion that he disregarded trial counsel's immigration advice entirely, and therefore the advice's accuracy was irrelevant to his plea decision. *See Hill*, 474 U.S. at 60 (no prejudice resulting from incorrect advice on parole eligibility where record lacked evidence that defendant "placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty"). After trial counsel specifically advised appellant to consult an immigration specialist and referred him to a reasonably priced practitioner, appellant declined to seek immigration advice.

Appellant's testimony suggests this inattention stemmed from his belief that he could not be deported "no matter what." Indeed, even as his new trial motion hinged upon the claim that he would certainly be deported, appellant testified that he was unsure if this was the case. By this point in the proceedings, if appellant believed his trial counsel, new-trial counsel, or both, he would have concluded that deportation was imminent. His testimony reveals that he believed neither. Given this evidence, the trial court could reasonably have concluded that appellant credited his personal experience of consistently avoiding deportation over his lawyers' advice that he would certainly be deported. *Cf. Ex parte Moreno*, No. 02-11-00272-CR, 2012 WL 3734003 (Tex. App.—Fort Worth Aug. 30, 2012, pet. filed) ("The trial court could have rationally determined, based upon appellant's apparent total inaction upon receiving repeated verbal and written warnings about the possibility of his deportation, that his immigration status was not his primary concern upon pleading guilty."). Because appellant apparently ignored all legal advice on this matter, there is evidence that his trial counsel's advice, no matter how inaccurate it may have been, did not influence his decision to plead guilty. Accordingly, the evidence supports the trial court's implied finding that appellant would have pled guilty even if effectively advised, and the trial court did not abuse

its discretion in denying appellant's motion seeking a new trial based on ineffective assistance of counsel. *See Riley*, 378 S.W.3d at 459. We overrule appellant's issue.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.


/s/    J. Brett Busby
Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).