**Opinion issued August 28, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-01009-CR

————————————

## VINCENT ALUSHULA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court at Law No. 4
Harris County, Texas
Trial Court Case No. 2040600

## MEMORANDUM OPINION

A jury found appellant, Vincent Alushula, guilty of the misdemeanor offense

of assault of a family member.[1]    The trial court assessed his punishment at

---

[1]    *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b) (Vernon Supp. 2017); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.013 (Vernon 2018); TEX. FAM. CODE ANN. §§ 71.003 (Vernon 2014), 71.004 (Vernon Supp. 2017).

confinement for one year, suspended the sentence, placed him on community supervision for eighteen months, and assessed a fine of $300. In two issues, appellant contends that his trial counsel provided him with ineffective assistance by not advising him of the potential immigration consequences that would result if he pleaded not guilty and was convicted at trial.

We affirm.

## Background

Appellant, while represented by counsel, entered a plea of not guilty to the offense of assault of a family member, and his case proceeded to trial before a jury.

At trial, Ashley Stakes, a paramedic, testified that at approximately 1:50 a.m. on August 5, 2015, she and her partner were dispatched to a home in Harris County. When they arrived, they found the complainant, appellant's wife, who seemed frightened and was curled up on a couch in the garage. Complaining of pain in her rib-cage area, the complainant winced in pain during Stakes's hands-on assessment, which revealed that other parts of her body were also injured. The complainant told Stakes and her partner that "around midnight, approximately two hours before [they] arrived, she and her husband got into an argument and it became physical. She said it began with hitting with a closed fist and then escalated to . . . kicking and stomping and she described it as jumping on her." At this point, Stakes and her partner suspected that the complainant was a victim of

assault and called for assistance from law enforcement. Stakes further noted that the complainant did not want them to contact law enforcement because she was worried about her children.

Harris County Sheriff's Office Deputy W. Schreiber testified that on August 5, 2015, he was dispatched to a family disturbance. When he arrived at the scene, he saw the complainant in an ambulance. She was crying hysterically and appeared to be in a great deal of pain. The complainant was reluctant to explain what had happened, but she told Schreiber that appellant physically assaulted her. She explained that the altercation became physical after an initial verbal argument about appellant's alleged infidelity. The complainant told Schreiber that appellant struck her several times on her head and face with a closed fist, and he kicked her after she had fallen to the floor. She described it "almost like a jump or a stomp, where he actually came down on her chest area with the weight of his body." Schreiber explained that the injuries he observed on the complainant were consistent with her statement of what happened. The complainant further told Schreiber that she did not want appellant prosecuted because she was concerned about what would happen to her children and where they would live.

After speaking with the complainant, Deputy Schreiber knocked on the door to the house in search of appellant. Appellant's mother answered and let Schreiber and his partner into the house. Appellant was in a bedroom with the door locked,

3

but he opened the door at his mother's insistence. He told Schreiber that he and the complainant had been in a verbal argument. Appellant admitted to pushing her down to the floor, but denied striking or shoving her. Schreiber explained that he did not believe appellant's account of the altercation because the injuries and pain that the complainant appeared to be experiencing were inconsistent with only a shove to the floor. The deputies then took appellant into custody and transported him to the Harris County jail.

On behalf of the defense, the complainant testified that after midnight on August 5, 2015, she discovered that appellant was "cheating on" her. At the time, he was sleeping, and she started to hit him in order to wake him to confront him about the affair. Appellant pushed the complainant onto the bed to stop her from hitting him. He then got up to leave, and she fell down the stairs as she followed him. After appellant left, law enforcement officers knocked on the door and asked the complainant if she was alright. She told them that she was having some chest pains, but they left after she declined their offer to call for emergency medical assistance.

Later, the complainant ultimately asked a family member to call for emergency medical assistance. When the paramedics arrived, she told them that appellant assaulted her. However, she testified that she told them this only because she wanted to get back at appellant for his infidelity. The complainant further

4

testified that when a second set of law enforcement officers arrived at the scene, she "lied" to them about appellant assaulting her for the same reason. At trial, she insisted that appellant did not hurt her, and her injuries were caused by her fall.

Appellant testified that on August 5, 2015, he and the complainant got into an argument when she accused him of infidelity. He was asleep and awoke to the complainant hitting him. Appellant then pushed her down in self-defense. After he went downstairs to leave the house, he heard someone fall down the stairs. Appellant returned to the stairs, where he found the complainant, who was holding her chest and head, and he helped her up. She did not want to talk to him, so he left the house to "cool off." When he returned, appellant went upstairs and fell asleep. He then awoke to law enforcement officers knocking on the door to his bedroom.

Appellant further testified that he and the complainant are lawful, permanent residents of the United States, and he did not know whether criminal charges or convictions could jeopardize his residency status.

After the jury found him guilty and the trial court sentenced him, appellant filed a motion for new trial, contending, among other things, that his trial counsel misinformed him of the immigration consequences of his plea. Specifically, he asserted that he was "misled about [the] rights that he would be waiving by taking his case to trial, or the consequences of being found guilty at trial as opposed to

5

pleading guilty prior to trial." Appellant attached to his motion two affidavits: one executed by appellant and one executed by his trial counsel, Michael Pham. In his affidavit, appellant testified as follows:

> I was the defendant represented by Michael Pham in 2016 f[or] a charge of assault against a family member . . . . Leading up to trial Mr. Pham did not advise me of my rights as a lawful permanent resident and how a charge of this nature would affect me. I was not made aware of the rights I had under the Immigration Code until after the case went to trial. I did not know I was waiving my rights to fight removability, nor was [it] explained [to me] that there would be negative immigration consequences to taking this case to trial. I was only told that I would be deported if I pleaded guilty to the offense. I have since discovered that this information was not true.

In his affidavit, Pham testified as follows:

> Prior to trial I knew of some inconsistencies in the statements of the complainant . . . . I was also aware that both [appellant and the complainant] were resident aliens. However, prior to trial I did not consult with an immigration attorney prior to setting the case for trial regarding the consequences of pleading or what the consequences of a conviction or the various punishments would be. I believed in the defense that was presented at trial, but I was not prepared to make an argument for punishment in the event that the defense would fail.
>
> Had I consulted an immigration attorney I believe the outcome in Mr. Alushula's case would be different.

The trial court denied appellant's motion for new trial without holding a hearing.

## Standard of Review

The Sixth Amendment guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To prove a claim of ineffective

assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

### Ineffective Assistance of Counsel

In two issues, appellant argues that the trial court erred in denying his motion for new trial because his trial counsel rendered ineffective assistance in not

advising him of the immigration consequences of pleading not guilty and proceeding to trial, which severely prejudiced him by "unnecessarily subject[ing] him to deportation."

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 1480–81 (2010); *see also Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009) ("There is no doubt that an accused has a Sixth Amendment right to the effective assistance of counsel in guilty plea proceedings."). To provide effective assistance during plea proceedings, "counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 282 S.W.3d at 500.

When a defendant challenges the validity of a plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends first on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). Plea counsel's performance is deficient if counsel fails to advise a noncitizen defendant about deportation consequences that are "truly clear." *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483; *Aguilar v. State*, 375 S.W.3d 518, 524 (Tex. App.—Houston [14th Dist.] 2012), *vacated on other*

*grounds*, 393 S.W.3d 787 (Tex. Crim. App. 2013).  Thus, plea counsel is deficient if counsel merely mentions the possibility of deportation when the relevant immigration provisions are presumptively mandatory.  *See Aguilar*, 375 S.W.3d at 524.  However, when the law is not clear, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483.

Even if appellant could establish the first prong of the *Strickland* test, he must also establish prejudice under the second prong in order to prevail on his claim for ineffective assistance regarding his decision to plead not guilty.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In regard to the second prong of the *Strickland* test, appellant argues that he was prejudiced because "[i]f trial counsel had informed [him] of the clear immigration consequences that would result from proceeding to trial and potentially obtaining a conviction, [he] would have certainly pled to a deferred adjudication."[2]

Under federal immigration law, there are several provisions indicating that appellant might be deported upon pleading guilty or being convicted of the offense

---

[2] We note that the standards set forth in *Padilla v. Kentucky* do not directly apply here because appellant did not plead guilty to the charge of assault of a family member, but, instead, had a full trial on the merits.  *See* 559 U.S. 356, 374, 130 S. Ct. 1473, 1487 (2010); *Martinez v. State*, 449 S.W.3d 193, 206 (Tex. App.—Houston [1st Dist.] 2014, pet ref'd) (refusing to apply *Padilla* to scenario in which defendant pleaded not guilty and was convicted after trial).

of assault of a family member.[3]  First, "[a]ny alien who . . . is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and . . . is convicted of a crime for which a sentence of one year or longer may be imposed, . . . is deportable."  8 U.S.C. § 1227(a)(2)(A)  (2012).[4]  Additionally, "[a]ny alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable."  *Id.* § 1227(a)(2)(E).  The term "crime of domestic violence" includes "any crime of violence . . . against a person committed by a current or former spouse of the person."  *Id.*  "The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where . . . a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and . . . the judge has ordered some form of punishment,

---

[3]   We express no opinion as to whether appellant's conviction actually subjects him to deportation under federal immigration law.  And there is no allegation or evidence in the record suggesting immigration proceedings have been initiated against him.

[4]   Neither party disputes that the offense of assault of a family member is a crime of moral turpitude.  And assault of a family member is a crime for which "a sentence of one year or longer may be imposed."  8 U.S.C. § 1227(a)(2)(A) (2012); *see also* TEX. PEN. CODE ANN. §§ 12.21 (Vernon 2011) ("Class A misdemeanor shall be punished by . . . confinement in jail for a term not to exceed one year . . . ."), 22.01(b) (Vernon 2011) (explaining offense Class A misdemeanor).

penalty, or restraint on the alien's liberty to be imposed." *Id.* § 1101(a)(48)(A) (2012).

In this case, appellant admits that his trial counsel advised him that pleading guilty would result in his deportation, but he fails to establish how accepting a plea resulting in deferred adjudication would have resulted in a more favorable deportation consequence than being convicted after a trial. Even assuming that the State offered appellant deferred adjudication in exchange for his plea of guilty or nolo contendere to the offense of assault of a family member, deferred adjudication is still considered a conviction under federal immigration law.[5] *Id.*; *Moosa v. INS*, 171 F.3d 994, 1005–06 (5th Cir. 1999) (recognizing assessment of deferred adjudication in Texas constitutes conviction for immigration purposes); *see also* TEX. CODE CRIM. PROC. ANN. art. 42A.101(a) (Vernon 2018) (deferred adjudication available only after judge receives "plea of guilty or nolo contendere" and finds evidence "substantiates the defendant's guilt"). As such, accepting an alleged plea-bargain offer from the state for deferred adjudication of the offense of

---

[5] Appellant's argument that deferred adjudication would place his conviction under the "petty offense exception" "because a deferred adjudication has no actual incarceration time imposed as part of the sentence" is without merit. The provision he cites for this argument is inapplicable because it concerns categories of persons who will not be allowed admission into the country, not deportation of those already admitted. *See* 8 U.S.C. § 1182(a) (2012) (discussing "[c]lasses of aliens ineligible for visas or admission").

assault of a family member would not, alone, prevent appellant from being deported.

Further, the record does not reflect, nor does appellant assert, that he was offered any other type of plea that might have made deportation less likely under these circumstances. His insinuation that the defense and prosecution *might* have been able to creatively craft a plea bargain that would reduce his likelihood of deportation is, without support in the record, insufficient to satisfy his burden to establish harm by a preponderance of the evidence. *E.g.*, *Vanderbilt v. State*, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981) ("Assertions in an appellate brief that are unsupported by the record will not be accepted as fact.").

In sum, appellant has not shown a "reasonable probability" that "but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Accordingly, we hold that appellant has not established that he was prejudiced as a result of his trial counsel's alleged ineffective assistance.

We overrule appellant's second issue. Therefore, we need not address his first issue in which he asserts that his "trial counsel engaged in constitutionally deficient performance, as required to establish ineffective assistance under the first prong of *Strickland*."

## Conclusion

We affirm the judgment of the trial court.

                                        Terry Jennings
                                        Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Do not Publish. TEX. R. APP. P. 47.2(b).