**Affirmed and Opinion filed January 8, 2013.**



In the

# Fourteenth Court of Appeals

## NO. 14-12-00090-CR

## EX PARTE YADHER MURILLO

**On Appeal from the County Court at Law No. 7**
**Harris County, Texas**
**Trial Court Cause No. 1783805**

## O P I N I O N

Applicant Yadher Murillo appeals the habeas court's denial of his post-conviction application for writ of habeas corpus, arguing that he was denied effective assistance of counsel because his plea counsel failed to properly apprise him that he faced presumptively mandatory deportation as a result of his guilty plea, thus rendering his plea involuntary under *Padilla v. Kentucky*, —U.S.—, 130 S. Ct. 1473 (2010). We conclude that applicant failed to prove that he was prejudiced by any deficient performance of plea counsel. Finding no abuse of discretion, we therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Applicant, a native of Nicaragua, became a legal permanent resident in 2001. In 2004, he was charged with the class A misdemeanor offense of assault of a family member—his wife. Applicant pleaded guilty to this offense, and the trial court assessed punishment at one year of deferred adjudication and a $400 fine.

In 2009, applicant received notice from federal immigration officials for removal proceedings, and was ordered removed based on his conviction for assault of a family member. In 2011, applicant filed an application for writ of habeas corpus, challenging the voluntariness of his plea based on ineffective assistance of counsel.

At a hearing before the habeas court, applicant testified that his defense attorney, Eva Silva, told him that he could have problems with immigration and that he may be deported if he entered a guilty plea. According to applicant, the trial court[1] also warned him that he could have immigration problems or consequences as a result of his guilty plea. Applicant testified that Silva did not advise him that he definitely would be deported, and that he did not remember if the trial court advised him that he shall or would be deported because of his guilty plea. Applicant stated that he would not have pleaded guilty if he had been advised that he shall or would be deported because of his plea, and that he would have insisted that Silva take his case to trial. The habeas court took judicial notice of the "green plea form" that applicant signed in conjunction with his guilty plea. This form includes a notice that if the accused is not a citizen of the United States, then a plea of guilty or nolo contendere may result in deportation, exclusion from admission, or denial of naturalization under federal laws. Applicant agreed that when he signed this form he knew he could be deported.

---

[1] The habeas judge was the same judge who presided over applicant's plea proceedings.

Silva recalled representing applicant for the assault-of-a-family-member case and that he pleaded guilty. Silva did not recall the exact conversation she had with applicant more than seven years earlier, but testified that she discusses her noncitizen client's potential immigration consequences prior to entering into a plea bargain agreement. Part of Silva's standard practice involves advising the client of the contents of the trial court's green plea form—informing the client that he may or could be deported, denied admission to the United States, or denied citizenship based on his guilty plea. Silva stated that advising the client of the plea form contents is "the bare minimum," but that she "actually goes into more detail with [her] clients": "I admonish my client that he will be facing some immigration consequences at some time. . . . I can't tell them when, but the fact that they are some day going to face adverse consequences will come."

When asked about the facts of applicant's assault case, Silva referenced the offense report that was included in applicant's case file at the time she spoke with him. Silva recalled that the report indicated the officer who responded to the call actually viewed applicant assaulting the complainant or saw him on top of her, and that the officer heard the complainant screaming.

Applicant urged the habeas court to grant relief on the ground that Silva had provided ineffective assistance of counsel by failing to properly inform applicant that pleading guilty to assault against a family member rendered his deportation presumptively mandatory. The habeas court denied relief and subsequently issued findings of fact and conclusions of law. The habeas court issued the following findings: Silva advised applicant that he may be deported; Silva's standard business practice is to discuss potential immigration consequences with her client, which includes advising that he may or could be deported, denied admission, or denied citizenship; Silva's standard business practice is to review the green plea

form with her client and she reviewed it with applicant; Silva's standard business practice is to advise her client that someday they will face adverse immigration consequences; the trial court gives standard admonishments to every defendant subject to an INS/ICE hold, that he may be deported or denied citizenship as a result of his plea; and applicant freely and voluntarily signed the plea agreement form. The habeas court concluded as a matter of law that applicant freely and voluntarily entered his guilty plea and that Silva's representation of applicant met the standard required by the Sixth Amendment.

On appeal, applicant presents the sole issue of whether he is entitled to habeas relief based on ineffective assistance of counsel, complaining that his plea counsel performed deficiently by not informing him that his guilty plea would render his deportation presumptively mandatory and that he suffered prejudice because he would not have pleaded guilty had he known he was facing virtually certain deportation.

## II. STANDARD OF REVIEW

We review a habeas court's determination on an application for writ of habeas corpus for abuse of discretion. *Ex parte Fassi*, No. 14-11-00914-CR, — S.W.3d—, 2012 WL 6014603, at *3 (Tex. App.—Houston [14th Dist.] Dec. 4, 2012, no pet. h.) (citing *Aguilar v. State*, 375 S.W.3d 518, 520 (Tex. App.—Houston [14th Dist.] 2012, pet. filed)). The habeas applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Id.* (citing *Aguilar*, 375 S.W.23d at 520). "We consider the evidence presented in the light most favorable to the habeas court's ruling regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony." *Id.* (citing *Aguilar*, 375 S.W.3d at 520). We will uphold the habeas court's judgment as long as it is correct on any theory of law applicable to the case. *Ex*

4

*parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001).

### III.  GOVERNING LAW

Applicant sought habeas relief on the theory that he was denied effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and such ineffectiveness rendered his guilty plea involuntary under *Padilla v. Kentucky*, —U.S.—, 130 S. Ct. 1473 (2010).  The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  The two-pronged *Strickland* test applies to challenges to guilty pleas, such as the one in the present case, premised on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Thus, to be entitled to relief, applicant was required to show by a preponderance of the evidence that (1) trial counsel's performance fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 687–88, 694.  A reasonable probability is one sufficient to undermine confidence in the outcome.  *Id.* at 694.  Failure to establish either deficient performance or prejudice will defeat a claim of ineffectiveness.  *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

This court applies *Padilla* retroactively.  *Aguilar*, 375 S.W.3d at 524.  Under *Padilla*, plea counsel's performance is deficient if counsel fails to advise his noncitizen client about deportation consequences that are "truly clear."  *Fassi*, —S.W.3d—, 2012 WL 6014603, at *4 (citing *Padilla*, 130 S. Ct. at 1483; *Aguilar*, 375 S.W.3d at 524).  Thus, plea counsel performs deficiently if he "merely mentions the possibility of deportation when the relevant immigration provisions are presumptively mandatory."  *Id.* (citing *Aguilar*, 375 S.W.3d at 524).  To

5

establish prejudice, applicant "'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla*, 130 S. Ct. at 1485; *Aguilar*, 375 S.W.3d at 525). "'The test is objective; it turns on what a reasonable person in the defendant's shoes would do.'" *Id.* (quoting *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (per curiam)).

In the *Padilla* context, when the prejudice prong of the *Strickland* test is dispositive, we need address only that prong on appeal. *Fassi*, —S.W.3d—, 2012 WL 6014603, at *4 (citing *Seamster v. State*, 344 S.W.3d 592, 594 (Tex. App.— Houston [14th Dist.] 2011, pet. ref'd)). "[I]t is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong." *My Thi Tieu v. State*, 299 S.W.3d 216, 225 (Tex. App.— Houston [14th Dist.] 2009, pet. ref'd). "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697). This is because the reviewing court's purpose "is not to grade trial counsel's performance." *Id.* (citing *Strickland*, 466 U.S. at 697)). We review the ultimate question of prejudice under *Strickland* de novo, giving deference to any underlying historical fact determinations by the habeas court. *Fassi*, — S.W.3d—, 2012 WL 6014603, at *4 (citing *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005)).

## IV. ANALYSIS

Applicant contends that the habeas court abused its discretion by denying him relief because plea counsel's failure to admonish applicant that he shall be deported or that his deportation was a virtual certainty was inadequate under *Padilla*'s requirement for plea counsel to advise noncitizen defendants of "truly clear" deportation consequences. Applicant further asserts if he had known that he

6

faced presumptively mandatory deportation, he would have insisted on going to trial on his assault charge and this decision would have been rational under the circumstances. The State responds that *Padilla* does not apply retroactively; plea counsel's advice was adequate because counsel advised applicant that someday he would face adverse immigration consequences; and applicant failed to establish prejudice.

We recently rejected the State's argument concerning, and have since reaffirmed, *Padilla*'s retroactivity. *Fassi*, —S.W.3d—, 2012 WL 6014603, at *3 (citing *Aguilar*, 375 S.W.3d at 524). However, we conclude that the habeas court acted within its discretion in denying applicant relief because he failed to prove prejudice.

### 1. Determining prejudice on this record

At the hearing, applicant presented evidence regarding his background in the United States and testified that he would have "no reason" to return to Nicaragua. He testified that at the time, he was working to support his wife and three children living with him, and that he had a sister who also lived in the United States. Applicant testified that the plea deal Silva discussed with him was thirty days in jail or one year of probation. He also testified that if he had known that he would be deported, he would not have pleaded guilty and would have insisted on going to trial. Silva testified that applicant pleaded guilty to assault of a family member. With regard to the facts of applicant's case, Silva testified that the offense report was included in the case file at the time she spoke with him. She recalled that the report indicated the officer who responded to the call viewed applicant either assaulting the complainant or on top of her, and that the officer heard the complainant screaming.

The habeas court here did not issue any findings of facts or conclusions of

7

law specifically relating to the prejudice prong of *Strickland*. Based on the court's findings and conclusions, it focused its decision on the deficient-performance prong of *Strickland* and decided it need not reach prejudice. However, despite this lack of findings, we can uphold the habeas court's denial of relief based on a lack of prejudice. This court is obligated to uphold the habeas court's judgment if it is supported by the record and was correct under any theory of law applicable to the case. *See Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003); *Taylor*, 36 S.W.3d at 886. This rule applies even if the habeas court gave a different, indeed erroneous, reason for its ruling. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Without addressing this court's analysis regarding prejudice in *Aguilar*, we conclude that *Aguilar* does not apply to the prejudice analysis in the case under review because we are not faced with a record that is "only marginally developed regarding the alleged prejudice." 375 S.W.3d at 526 (noting lack of live testimony and specific testimony regarding rationality of rejecting plea under circumstances, and also lack of rebuttal evidence by State).

### 2. Prejudice inquiry

In the *Padilla* context, we must determine whether applicant proved there is a reasonable probability that but for plea counsel's errors, he would not have pleaded guilty, which requires proof that a decision to reject the plea bargain was rational under the circumstances. *Fassi*, —S.W.3d—, 2012 WL 6014603, at *5 (citing *Padilla*, 130 S. Ct. at 1485). We make this inquiry on a "case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure." *Id.* We therefore proceed to review the circumstances surrounding applicant's plea in light of the evidence presented to the habeas court.

#### a. Evidence of applicant's guilt

One key circumstance courts consider when determining whether a decision

to reject a plea bargain would have been a rational one is the strength of the State's case or evidence of the applicant's guilt. For example, in *Fassi*, this court affirmed denial of habeas relief based on lack of sufficient prejudice where the evidence of guilt in the applicant's underlying marijuana possession case was "overwhelming." —S.W.3d—, 2012 WL 6014603, at *2, 6. There, the officer who conducted the traffic stop averred that the applicant smelled of marijuana and had marijuana flakes on his shirt, and then confessed to having marijuana in the vehicle. *Id.*

In *Ex Parte Ali*, the court affirmed denial of habeas relief based on lack of prejudice where "[t]he circumstances of this case . . . included evidence of Ali's guilt that was, in the words of counsel and [another client of counsel charged in the same sting], 'overwhelming' and 'very strong.'" 368 S.W.3d 827, 840 (Tex. App.—Austin 2012, pet. ref'd). In *Ali*, plea counsel averred that he reviewed the State's evidence with the applicant, including video and audio recordings showing him delivering drug paraphernalia to an undercover officer. *Id.* at 837, 840.

Applicant generally relies upon cases from various sister courts of appeals in which the courts found prejudice. Presuming, without deciding, that the analysis in these cases is correct, these cases are distinguishable. In those cases, either the State presented no rebuttal evidence as to the strength of its case[2] *or*, as outlined in the next factor, the circumstances indicated that the applicant had a defense to the charge or did not believe he was guilty.

---

[2] *Ex Parte Tanklevskaya*, 361 S.W.3d 86, 90 (Tex. App.—Houston [1st Dist.] 2011, pet. filed); *Ex Parte Romero*, 351 S.W.3d 127, 131 (Tex. App.—San Antonio 2011, no pet.). Moreover, we have rejected the reasoning employed by the San Antonio court of appeals in *Romero*, where the court reversed denial of a habeas corpus application based almost entirely on the self-serving affidavit of the applicant. *Fassi*, —S.W.3d—, 2012 WL 6014603, at *7. *See also Ali*, 368 S.W.3d at 841 n.11 (declining to adopt approach on prejudice prong whereby reviewing court—as in *Tanklevskaya* and *Romero*—simply accepts as true applicant's statements without undertaking analysis of whether decision to reject plea bargain and instead go to trial was rational under the circumstances).

Here, evidence in the record indicates that the State would have had a strong case against applicant at trial for assault of a family member. Silva testified that the offense report from the State's file indicated the responding officer either viewed applicant actually assaulting the complainant or saw him "on top of her." In addition, the responding officer heard the complainant screaming. This offense report was included in the case file at the time Silva spoke with applicant about his plea option. Applicant does not dispute the contents of the offense report or that Silva reviewed it with him during plea discussions.

### b. Factual or legal defenses

Another key circumstance courts explicitly consider when analyzing the prejudice prong is whether the applicant had any defenses. In *Fassi*, in affirming the denial of habeas relief based on prejudice, this court noted that "appellant presented no affirmative evidence that he had any factual or legal defenses to the charge" of marijuana possession. —S.W.3d—, 2012 WL 6014603, at *6.

Courts that have found prejudice also properly take into consideration whether the applicant had any defenses to the charged offense. For example, in *Salazar v. State*, the court considered that the applicant "believes he is not guilty because he thought the taking of the tailgate was a prank and that his friend intended to return it." 361 S.W.3d 99, 103 (Tex. App.—Eastland 2011, no pet.). Likewise, in *Ex Parte Olvera*, the applicant argued that he had a "great defense" to the charge of assaulting a public servant—he was approached from behind and did not know the person was a police officer. No. 05-1101349-CR, —S.W.3d—, 2012 WL 2336240, at *4 (Tex. App.—Dallas June 20, 2012, no pet.) (officer testified at habeas hearing that, while being arrested, Olvera said, "I didn't know you were the police. I didn't know you were the police.").

Here, applicant presented no affirmative evidence that he had any factual or

legal defenses to the charge, or that he believes he was not guilty of assaulting his wife.

### c. *Immigration status as primary concern*

Another circumstance courts consider when determining prejudice is whether the applicant presented evidence indicating that the immigration consequences of his plea were his "paramount concern." *Fassi*, —S.W.3d—, 2012 WL 6014603, at *6. In *Fassi*, in affirming the denial of habeas relief based on lack of prejudice, this court considered that the applicant presented no evidence he had "expressed his concern about deportation to the trial court, plea counsel, or anyone else at the time of his plea." *Id.*

Cases in which courts have found prejudice present different circumstances because in those cases the applicant presented other evidence tending to support that immigration consequences were his primary concern. *See id.* at *7. In *Ex parte Elizondo-Vasquez*, plea counsel testified that the applicant's "primary concern was how the charge and any resulting incarceration would impact his status as an immigrant" but that he failed to provide his client with a definitive answer. 361 S.W.3d 120, 121, 122–23 (Tex. App.—Texarkana 2011, no pet.) (reversing denial of habeas relief "in light of clear and consistent evidence that Vasquez would not have pled guilty but for the deficient advice"). At every meeting, the applicant had "specifically inquired of trial counsel about [his immigration status] and the effect his plea would have upon it, as well as potential outcomes." *Id.* at 123.

Here, the record contains no evidence that applicant expressed to anyone that deportation was his primary concern or that he specifically asked plea counsel about the effect his plea would have on his immigration status. Indeed, applicant presented no evidence that he did or said anything to express his alleged concern—

11

that he had "no reason" to want to return to Nicaragua—despite receiving multiple warnings. An applicant's failure to express concerns about immigration consequences after receiving repeated warnings also may be a prejudice factor to consider. *Fassi*, —S.W.3d—, 2012 WL 6014603, at \*6 n.6 (citing *Ex parte Moreno*, 382 S.W.3d 523, 529 (Tex. App.—Fort Worth Aug. 30, 2012, no pet.) (finding no prejudice where applicant's "total inaction upon receiving repeated verbal and written warnings about the possibility of his deportation" indicated "his immigration status was not his primary concern upon pleading guilty")). This is particularly so when, in addition to plea counsel's and the trial court's warnings to applicant that he possibly could face deportation, one of the warnings that the habeas court found counsel provided was that applicant certainly would face adverse immigration consequences someday if he pleaded guilty.

### d. Plea deal compared to penalties risked at trial

When analyzing prejudice, courts also consider the circumstances of the plea deal compared to what penalties the applicant risked by going to trial. Although the inquiry is not whether the applicant would have received a more favorable disposition at trial, we properly consider evidence concerning the likelihood of success at trial when determining whether it would be rational to reject the plea bargain. *Id.* at \*6 n.4; *Ali*, 368 S.W.3d at 840 (finding no prejudice where applicant "would have risked the same deportation consequences and, in addition, could have been sentenced to up to one full year of actual jail time" at trial where his conviction on delivery of drug paraphernalia was "virtually certain"). We also consider whether the applicant presented evidence that any other plea deal would have helped him avoid negative immigration consequences. *Fassi*, —S.W.3d—, 2012 WL 6014603, at \*6; *see Moreno*, 382 S.W.3d at 529 (finding no prejudice where applicant presented no evidence State would have considered a different

plea bargain that did not have same immigration consequences). And we consider whether the applicant has presented evidence regarding the likelihood of obtaining probation if convicted at trial. *Fassi*, —S.W.3d—, 2012 WL 6014603, at \*7 & n.7; *Salazar*, 361 S.W.3d at 103.

In *Fassi*, the plea deal was six months' deferred adjudication and a \$150 fine. If convicted at trial, the applicant faced a maximum of six months' confinement and a \$2000 fine for Class B misdemeanor marijuana possession. —S.W.3d—, 2012 WL 6014603, at \*1. Although Fassi argued that his situation was "no different" from that in *Salazar*—and in fact Salazar potentially would have risked more (180 days to two years in jail and a \$10,000 fine) by going to trial on his theft charge—Salazar presented evidence of a factual defense to the crime. *Fassi*, —S.W.3d—, 2012 WL 6014603, at \*7 (citing *Salazar*, 361 S.W.3d at 103). Further, Salazar presented evidence that he had a great deal of community support that would help him seek probation if convicted at trial. *Id.* (citing Salazar, 361 S.W.3d at 103). In contrast, Fassi presented no evidence of any defenses, merely argued that he would be eligible for probation if convicted at trial but failed to develop the habeas record concerning the likelihood of actually obtaining probation, and presented no evidence that another plea deal would have helped him avoid deportation. *Id.* at \*2, 6 & n.7. Thus, despite the shorter maximum jail time and lower maximum fine amount, in affirming based on the prejudice prong, we reasoned that "a rational noncitizen would not likely risk a trial if the result is near-certain conviction—under those circumstances, the defendant faces a harsher criminal penalty in addition to the same immigration consequences of pleading guilty." *Id.* at \*6.

Here, applicant testified that the plea deal offered by the State was thirty days in jail or one year of probation. If convicted at trial for assault of a family

13

member, applicant faced a maximum of one year in jail and a $10,000 fine. TEX. PENAL CODE ANN. § 12.21 (West 2012). Either way, applicant was presumptively deportable.[3] On this record, where there was strong evidence of guilt and no evidence of any factual or legal defenses to the crime, the odds of acquittal, and thus of avoiding deportation, appear to have been quite slim. Moreover, applicant did not assert that he would have attempted to negotiate a different plea deal, and presented no evidence that any other plea deal would have helped him avoid deportation. Further, although applicant would have been eligible for probation if convicted at trial, he failed to present evidence that he likely would receive probation. *Cf. Salazar*, 361 S.W.3d at 103 (noting evidence of community support for probation). Essentially, the choice facing applicant was whether he wanted to take a plea deal where he could receive little or no jail time and would face presumptively mandatory deportation *or* reject the deal and proceed to trial, where there was a significant likelihood he would be convicted, and where he risked the exact same deportation consequence and a harsher penalty of up to one full year in jail.

### 3. Applicant did not prove prejudice.

Applicant particularly attempts to analogize his case to *Salazar* because of certain similar positive background facts (no prior criminal record and family ties in the United States) and based on a relatively similar length of jail time at risk for the underlying crime if convicted at trial (180 days to two years versus one year). Presuming, without deciding, that the analysis in *Salazar* is correct, *Salazar* presented entirely distinguishable circumstances: the State presented no rebuttal evidence on prejudice; the applicant believed he had not committed any crime but

---

[3] *See Enyong v. State*, 369 S.W.3d 593, 600–02 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that deportation consequence was "truly clear" for conviction for misdemeanor assault of a family member).

merely had participated in his friend's high-school prank; and the applicant presented evidence regarding the community support that would help him seek probation if convicted at trial. 361 S.W.3d at 101–03.

Aside from applicant's own self-serving statement that he would have insisted his counsel take his case to trial had he known he would be deported, he presented no other evidence corroborating his position that it would have been rational to reject a plea deal under the circumstances. *See Ali*, 368 S.W.3d at 840–41. Applying the factors described above, we conclude that applicant failed to prove prejudice.

First, the State presented rebuttal evidence showing that it had a strong case against applicant for the charge of assault of a family member based on Silva's testimony describing the offense report of the responding officer contained in the State's file, which report she shared with applicant during their plea discussions. Second, applicant did not present any evidence that he had any potentially viable defense to the charge of assaulting his wife. Third, although applicant generally testified that he had "no reason" to want to return to Nicaragua, he did not present any evidence that he informed plea counsel or anyone else, including the trial court, that avoiding deportation was his primary concern. Even assuming plea counsel's advice did not meet *Padilla*'s performance standard, the record reflects that—in addition to multiple warnings about how pleading guilty could result in his deportation—Silva told applicant he someday would face adverse immigration consequences. Fourth, based on the evidence of applicant's guilt and his lack of defenses, his likelihood of success at trial was low. And applicant presented no evidence that another plea deal could have helped him avoid deportation or that he likely would receive probation if convicted. Thus, applicant would have faced a harsher criminal penalty in addition to the same deportation consequence if he had

15

rejected the plea bargain.

We therefore conclude that applicant has failed to prove that a decision to reject the plea deal would have been rational under the circumstances. Thus, the habeas court did not abuse its discretion in denying applicant's application for relief, and we overrule applicant's sole issue on appeal.

## V. CONCLUSION

Accordingly, we affirm the habeas court's judgment denying relief.


/s/  Tracy Christopher
    Justice


Panel consists of Justices Frost, Christopher, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).