ACCEPTED
07-15-00224-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
10/20/2015 11:26:05 AM
Vivian Long, Clerk

ORAL ARGUMENT WAIVED

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

10/20/2015 11:26:05 AM

VIVIAN LONG
CLERK

## IN THE COURT OF APPEALS
## FOR THE SEVENTH DISTRICT OF TEXAS
## AT AMARILLO

### NO. 07-15-00224-CR

**EFRAIN LEDEZMA MARTINEZ**
Appellant,
V.
**THE STATE OF TEXAS**
Appellee.

_____

**APPEAL FROM THE 69TH DISTRICT COURT**
**MOORE COUNTY, TEXAS**

_____

**BRIEF FOR THE STATE OF TEXAS**

_____

> **DAVID GREEN**
> **69TH DISTRICT ATTORNEY**
>
>
> **LARRY FADLER**
> **SBN 24080125**
> **ASSISTANT DISTRICT**
> **ATTORNEY**
> **715 Dumas Ave., Room #304**
> **69thada@moore-tx.com**
> **Dumas, Texas 79029**
> **Phone: (806)935-5654**
> **Fax: (806)468-5566**
>
> **ATTORNEY FOR THE STATE**

## *TABLE OF CONTENTS*

INDEX OF AUTHORITIES…………………………………………………………………………………………………………iii

STATEMENT OF THE CASE…………………………………………………………………………………………………..2

STATE'S COUNTERPOINTS

### COUNTERPOINT NO. 1

The Trial Court was correct when it denied the Appellant's Application for Writ of Habeas Corpus because Appellant failed to meet either prong of the Strickland Test.

### COUNTERPOINT NO. 2

Appellant was aware of the immigration consequences of his plea, the trial court's failure to orally admonish Appellant resulted in harmless error.

Table of Authorities

Chaidez v. United States,
568 U.S. __, 133 S. Ct. 1103, 1110 (2013)…………………………………………………..9,10,11,12


Danforth v. Minnesota,
552 U.S. 264 (2008)…………………………………………………………………………..10


Ex parte De Los Reyes,
392 S.W.3d 675 (Tex. Crim. App. 2013)……………………………………………………..10,11


Ex parte Fassi,
388 S.W.3d 881, 886
(Tex. App.—Houston [14th Dist.] 2012, no pet.)……………………………………………10,11


Ex parte Luna,
401 S.W.3d 329, 334
(Tex. App.—Houston [14th Dist.] 2013, no pet.)……………………………………………..11

Ex Parte Moreno, 382 S.W.3d at 528-29.
(Tex. App.—Fort Worth 2012, pet. ref'd)…………………………………………………….13


Ex Parte Morrow, 952 S.W.2d 530
(Tex. Crim. App. 1997)……………………………………………………………..……8,12

Ex Parte Murillo, 389 S.W.3d 922
(Tex. App.—Houston [1st Dist.] 2013, no pet.)……………………………………10,13,14,16

Ex parte Obi, 446 S.W.3d 590, 596-601
(Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)……………………………………………16


Ex parte Sudhakar, 406 S.W.3d 699, 701-02

(Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)……………………………………………..12

Ex parte Tanklevskaya, 361 S.W.3d 86
(Tex. App.—Houston [1st Dist.] 2011)……………………………………………………….12

Ex parte Wongjaroen, 2008 WL 4809494
(Tex. App. Houston 14th Dist. Nov. 6, 2008)………………………………………………….9

Padilla v. Kentucky, 559 U.S. 356 (2010)…………………………………………………..9,10

Rodriguez v. State, 425 S.W.3d 655
(Tex. App. Houston 14th Dist. 2014)…………………………………………………………18

State v. Guerrero, 400 S.W.3d 576, 588
(Tex. Crim. App. 2013)……………………………………………………………………...11

Strickland v. Washington, 466 U.S. 668 (1984)……………………………………………...8

Teague v. Lane, 489 U.S. 288, 301-07 (1989)……………………………………………...10,11

STATUES

8 U.S.C. § 1101(a)(48)(A)……………………………………………………………………11

TEX . PENAL CODE ANN . § 12.22…………………………………………………………..15

IN THE COURT OF APPEALS
FOR THE SEVENTH DISTRICT OF TEXAS
AT AMARILLO


NO. 07-15-00224-CR


---


EFRAIN LEDEZMA MARTINEZ
Appellant,
V.
THE STATE OF TEXAS
Appellee.

---

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS in the above-styled and numbered cause and files this the State's brief in response to the brief of Appellant, EFRAIN LEDEZMA MARTINEZ. Appellant plead guilty to the felony offense of Possession of a Controlled Substance, Penalty Group 1 in the amount of more than a gram, less than four grams. The Honorable Judge Ron Enns of the 69th District Court, Moore County, Texas, presiding judge.

## STATEMENT OF FACTS

On February 12, 2001, Appellant was charged by indictment with the felony offense of possession of a controlled substance, penalty group 1, in the amount of more than one (1) gram but less than four (4) grams, namely cocaine. (C.R. 1:59)  This offense occurred on August 14, 2000.  (C.R. 1:59)   Appellant entered a guilty plea to the above offense on February 26, 2001 and received a deferred adjudication sentence of seven years. (C.R. 1:47)  Prior to the plea hearing, Appellant, with the aid of an interpreter, signed plea documents waiving many of his rights. (C.R. 1:9-15)  In those signed plea papers contained admonitions on potential consequences of a non U.S. citizen entering a plea, specifically; "I understand that if I am not a citizen of the United States that my plea may result in deportation, exclusion of admission to the country, or denial of naturalization under federal law." (C.R. 1:11)

During the plea hearing Appellant was called to the witness stand by Appellant's counsel Jerrod Pingleton. (C.R. 1:70)  Appellant was aided in the hearing with an interpreter and was sworn in under oath as a witness. (C.R. 1:70, 71)  The court asked of Appellant if he had had the opportunity to go over the entire document with an interpreter and if he understood all the documents before him? (C.R. 1:67)  The Appellant replied yes to both of these questions from the court. (C.R. 1:72)  Furthermore, the Appellant stated that he had understood the consequences of his plea. (C.R. 1:72)  While questioning the Appellant, Appellant's counsel asked of Appellant, "and you also understand that a result – that a plea of guilty may result in deportation from the United States?" (C.R. 1:72)  To which Appellant replied "Yes." (C.R. 1:72) Appellant Counsel then followed that question with, "Exclusion from this country?" (C.R. 1:72) To which Appellant again replied, "Yes." (C.R. 1:72) Appellant Counsel then asked as a follow up question "or denial of your naturalization under federal law?" (C.R. 1:72) To which Appellant

replied "Yes." (C.R. 1:72) Appellant's counsel finally asked of Appellant, if there was anything that he did not understand and if he had any questions, Appellant stated that he understood what was going on and that he did not have any questions. (C.R. 1:71) At this time Appellant was passed for cross examination by District Attorney David Green, Mr. Green asked of Appellant if he had been over the indictment with his attorney and if everything in that indictment was true and correct, both questions Appellant responded yes. (C.R. 1:73) On June 19, 2001 the 69th District Attorney (Moore County) filed a Motion Requesting Court to Adjudicate and Make Final Disposition, a Capias was issued for Appellant's arrest contemporaneously. (C.R. 1:16, 17) Appellant subsequently filed his Motion to Dismiss and Plea in Bar, which motion was granted on July 25, 2011, dismissing the Case. (R.R. 1:7) On July 27, 2011, the Honorable Judge Enns signed an Order Discharging Defendant from Community Supervision Deferred Adjudication. (C.R. 1:36) On March 5, 2015 Appellant filed a Writ of Habeas Corpus. (C.R. 1:38) The Writ was set for hearing on April 20, 2015. After hearing argument and receiving case law from both the petitioner and the respondent, the Writ was denied. (C.R. 1:97) Appellant filed his Notice of Appeal on June 4, 2015.

All references to the indictment, official motions, plea papers, etc. are contained on the Clerk's Record, Volume 1. The State shall refer to this as "C.R. 1." All references to relevant testimony are contained in the official Reporter's Record, numbered Volumes 1 and 2. The State shall refer to these "R.R. 1" and "R.R. 2."

ISSUES PRESENTED

ISSUE NUMBER ONE

The Trial Court was correct when it denied the Appellant's Application for Writ of Habeas Corpus because Appellant failed to meet either prong of the Strickland Test.

A. Appellant failed to establish that Pingelton was ineffective under the first prong of Strickland because Padilla does not apply retroactively to appellant's case.

The standard of review for evaluating claims of ineffective assistance of counsel is that Applicant must show (1) counsel's performance was so deficient that he was not functioning as acceptable counsel under the Sixth Amendment and (2) there is a reasonable probability that, but for counsel's error or omission, the result of the proceedings would have been different, i.e., sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 2064-69, 80 L.Ed.2d 674 (1984). Generally, defense counsel has no obligation under the Sixth Amendment's guarantee of effective assistance of counsel to advise a defendant of the collateral consequences of the defendant's plea. See *Morrow*, 952 S.W.2d at 536 (holding that the Sixth Amendment assurance of effective assistance of counsel does not extend to advice regarding collateral, indefinite consequences of a plea, such as deprivation of the rights to vote and travel abroad, possible undesirable discharge from the armed forces, etc.). Though deportation and other adverse immigration effects had historically been included in the list of collateral consequences to which Strickland's test for proficiency of counsel under the Sixth Amendment did not apply, the Supreme Court held in *Padilla* that, because such effects had a "close connection to the criminal process" and could not be easily classified as either collateral or direct, "advice regarding deportation is not categorically removed from the ambit of

the Sixth Amendment right to counsel." *Padilla*, 559 U.S. at 365-66. Thus, under *Padilla* a "lawyer's advice (or non-advice) about a plea's deportation risk" is not exempt from Sixth Amendment scrutiny, and Strickland applies to claims of ineffective assistance of counsel based on such grounds. *Chaidez*, 133 S. Ct. at 1110 (citing *Padilla*, 559 U.S. at 366). See *Chaidez v. United States*, 568 U.S. \_\_, 133 S. Ct. 1103, 1110 (2013) (observing that "lower courts…almost uniformly insisted on what *Padilla* called the 'categorical removal' of advice about a conviction's non-criminal consequences—including deportation—from the Sixth Amendment's scope.") (citing *Padilla*, 559 U.S. at 357); Ex parte *Tanklevskaya*, 361 S.W.3d 86, 92 (Tex. App.—Houston [1st Dist.] 2011) (noting that, prior to *Padilla*, "historically, courts had considered deportation to be a 'collateral consequence' of a guilty plea" which was outside the realm of effective assistance of counsel), pet. granted, judgm't vacated w.r.m., 393 S.W.3d 787 (Tex. Crim. App. 2013); Ex parte *Wongjaroen*, No. 14-07-00593-CR, 2008 WL 4809494 at *4 (Tex. App.—Houston [14th Dist.] Nov. 6, 2008, pet. ref'd) (mem. op., not designated for publication) (showing that, prior to *Padilla*, this Court held that "defense counsel's alleged failure to advise [the defendant] about such a collateral consequence as the impact of her guilty plea on her immigration status does not rise to the level of ineffective assistance of counsel.").

The *Padilla* Court then explained that the nature of the advice which a defense attorney must provide regarding adverse immigration consequences depends upon the certainty of those results. *Padilla*, 559 U.S. at 368-69. Given the complexities and fluctuating nature of immigration law, "when the law is not succinct and straightforward,… criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369; Ali, 368 S.W.3d at 834. But,

when "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence" for a defendant's conviction, defense counsel has an affirmative duty to advise the defendant that those removal consequences will be presumptively mandatory following the defendant's plea. *Padilla*, 559 U.S. at 368-69; Murillo, 389 S.W.3d at 926 ("Plea counsel performs deficiently if he 'merely mentions the possibility of deportation when the relevant immigration provisions are presumptively mandatory.'") (quoting Ex parte *Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). In *Chaidez v. United States*, 568 U.S.__, 133 S. Ct. 1103 (2013).  The Court stated that "*Padilla's* holding that the failure to advise about a non-criminal consequence could violate the Sixth Amendment would not have been—in fact was not—apparent to all reasonable jurists' prior to *Padilla*, and was not dictated by precedent in place at the time of that decision.  *Chaidez*, 133 S. Ct. at 1111.  Accordingly, the Chaidez Court concluded that *Padilla* was not merely an application of the governing principle to a different set of facts; rather, *Padilla* announced a "new rule" of criminal procedure and, thus, does not apply retroactively to cases which were already final when *Padilla* was decided. *Chaidez*, 133 S. Ct. at 1111-13; see *Teague v. Lane*, 489 U.S. 288, 301-07 (1989) (holding that the Supreme Court's criminal procedure decisions do not apply retroactively when they "announce a new rule…break new ground,…impose a new obligation" on the government, or comprise "merely an application of the principle that governed" a previous decision to an alternative set of facts). In Ex parte *De Los Reyes*, 392 S.W.3d 675 (Tex. Crim. App. 2013), the Texas Court of Criminal Appeals acknowledged that it could accord retroactive effect to *Padilla* as a matter of state habeas corpus law, notwithstanding the Supreme Court's holding in Chaidez. *De Los Reyes*, 392 S.W.3d at 679 (citing Danforth v. Minnesota, 552 U.S. 264 (2008) (holding that Teague does not "constrain the authority of state courts to give broader effect to new rules of

criminal procedure than is required by that opinion."). However, the Court of Criminal Appeals specifically declined to do so, opting instead to "adhere to the retroactivity analysis in Chaidez and its holding that *Padilla* does not apply retroactively." *De Los Reyes*, 392 S.W.3d at 679.

Appellant's argument throughout his brief that *Padilla* applies simply because the Appellant's case had not been adjudicated after receiving deferred adjudication is incorrect. There isn't a dispute that Appellant's order of deferred adjudication, while not a final conviction under Texas State law, became a final conviction for the purposes of federal immigration and *Padilla* when the trial court entered it on February 26, 2001. *State V. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013; see U.S.C. §1101 (a)(48)(A) ("Conviction means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt is withheld, where (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment penalty, or restraint on the alien's liberty to be imposed.")

Accordingly, under both federal and Texas law, when a defendant's conviction became final before March 31, 2010—the date that *Padilla* was decided—the defendant "may not benefit in a habeas or similar proceeding," and any collateral challenge to the conviction which is premised solely upon the principles expressed in *Padilla* must fail. See *Chaidez*, 133 S. Ct. at 1105-07 (holding that, because "*Padilla* does not have retroactive effect," *Chaidez*'s *Padilla*-based claim of ineffective assistance of counsel failed because her conviction became final in 2004—over five years prior to *Padilla*); *De Los Reyes*, 392 S.W.3d at 679 (concluding that the defendant could not benefit from the holding of Padilla because the defendant's conviction became final in 2001, prior to the new rule announced in *Padilla*); Ex parte *Luna*, 401 S.W.3d

329, 334 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (affirming that *Padilla* does not apply retroactively to cases that became final before *Padilla* was decided, and concluding that the trial court properly denied the defendant's *Padilla*-based claim on ineffective assistance of counsel when the defendant's conviction was finalized before *Padilla* issued); Ex parte *Sudhakar*, 406 S.W.3d 699, 701-02 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)

Due to the prevailing professional norms prior to *Padilla* required defense counsel to advise a client about only the direct consequences of the client's plea, Pingelton had no affirmative duty at the time of appellant's guilty plea in 2001 to advise appellant of the collateral consequence that appellant's plea and deferred adjudication community supervision would constitute a conviction for purposes of federal immigration law.   See *Chaidez*, 133 S. Ct. at 1110 (recognizing that, before *Padilla*, "lower courts…almost universally" held that the Sixth Amendment did not require defense attorneys to advise defendants about non-criminal consequences of a plea, such as deportation or inadmissibility); *Morrow*, 952 S.W.2d at 536 (holding that, pre-*Padilla*, the Sixth Amendment guarantee of effective assistance of counsel did not extend to advice regarding collateral consequences of a plea, such as deportation); Ex parte *Tanklevskaya*, 361 S.W.3d 86, 92 (Tex. App.—Houston [1st Dist.] 2011) (noting that, prior to *Padilla*. Even though Pingelton did not have an affirmative duty, at the time of Appellant's guilty to plea, to advise about the collateral consequences of federal immigration law, he went above the call of the law.  Pingelton, advised his client on the record that this plea could result in his deportation from the United States.  Appellant entered the plea knowing the consequences of the plea.  Appellant suffered what Pingelton referred to in his affidavit from "buyer's remorse."

**B. Appellant did not establish that Pingelton's allegedly-deficient performance prejudiced appellant under the second prong of Strickland**

Even if appellant could make a case that Pingelton's performance was Ineffective under pre-*Padilla* law, the trial court's ruling to deny appellant's requested writ relief was appropriate because appellant failed to establish prejudice under the second prong of Strickland; that is, appellant failed to show a reasonable probability that but for Pingelton's performance, appellant would have rejected the State's plea offer and insisted on going to trial, instead, and that such a decision would have been rational under the circumstances.

To support appellant's claim of prejudice, appellant offered only his own affidavit, wherein he claimed that "he would not have accepted the offer if he knew the immigration consequences and that there was an illegal search that he was never informed of prior to the plea" (C.R. 1:54). The habeas court is free to disbelieve appellant's self-serving testimony that he would not have pled guilty if he had been aware of the immigration consequences of his plea. *Moreno*, 382 S.W.3d at 528-29. Apart from the trial court's implied credibility determination, appellant's claim fails because examination of the circumstances surrounding appellant's plea demonstrates that it would not have been rational for appellant to have rejected the State's plea offer and insisted on taking his case to trial, instead. See generally *Murillo*, 389 S.W.3d at 928-31 (evaluating whether it would have been rational for the defendant to have risked trial instead of taking a plea deal based on the evidence of the defendant's guilt; whether the defendant had any factual or legal defenses to the charge; whether the defendant's immigration status was his primary concern, as opposed to avoiding jail or prison; and the benefits of the plea bargain compared to the immigration and criminal penalties risked at trial).

First, although there is little in the record directly establishing the strength of the State's case against appellant, appellant claims to have a defense based on an illegal search. There is no evidence to support his claim and neither Appellant nor Appellant's counsel provides anything other than a generic claim to give this accusation any validity. See *Murillo*, 389 S.W.3d at 929 (finding against the defendant on the issue of prejudice when, among other considerations, "[the defendant] presented no affirmative evidence that he had any factual or legal defenses to the charge, or that he believes he was not guilty [of the offense charged].").

Second, appellant failed to proffer any evidence that the immigration consequences of appellant's guilty plea were appellant's primary concern. In the defendant's affidavit he states that he believed that the offer that was presented was the least dangerous way to resolve the case and he chose this option as the best way to avoid jail time. (C.R. 1:55). Furthermore, Pingelton asked Appellant if he understood that his plea could result in his deportation and the Appellant understood and stated "yes." (C.R. 1:72) In addition, Pingelton's affidavit claims, while he cannot recall the specifics of the case that he was an experienced attorney at the time he represented Appellant and would have been able to identify any potential search issues. (C.R. 1:63). Given the likely scenario that there were not any legal defenses available to Appellant and he is stating this to continue his own self-serving purposes and that he stated that he accepted the plea that was the least dangerous, it is safe to assume that Appellant's primary goal was to avoid a prison sentence. The plea that Appellant entered into for deferred adjudication for a period of seven years further supports the thought that this was the Appellant's primary goal.

Third, appellant was not prejudiced by Pingelton's representation because the benefits of appellant's guilty plea far outweighed risks of conviction if appellant had opted to take his case to trial. Appellant's plea deal resulted in appellant being placed on deferred adjudication

community supervision for seven years with no term of incarceration as a condition of community supervision, and with only a $1,500.00 fine assessed against him. (C.R.1:14) Conversely, if appellant risked conviction at trial, that conviction would not only have produced the same deportation consequences as appellant bears now, but appellant would also have faced the more severe penal consequences of incarceration in jail for up to 10 years in Texas Department of Criminal Justice, as well as a potential fine of up to $10,000.00. See generally TEX . PENAL CODE ANN . § 12.22 (listing the punishment range for a third degree felony offense). Given that there is no evidence that appellant had any viable defenses to the charged offense, other than his vague claim without any support, the trial court could have reasonably concluded that it is likely that appellant would have been convicted if he had opted for a trial and, thus, that the State's plea offer of deferred adjudication was a good deal when compared to the risks attendant to that conviction—including the same adverse immigration consequences that appellant claims resulted from his underlying guilty plea in this case. The totality of the record and the circumstances surrounding appellant's guilty plea, including assessment of the above factors, indicates that there is no reasonable likelihood that a rational noncitizen-defendant in appellant's position would have chosen to risk probable defeat at trial, at which point the defendant would face a harsher criminal penalty in addition to the same immigration consequences of pleading guilty. Thus, the trial court could have rationally concluded that it would not have been reasonable for appellant to have rejected the State's plea offer and insisted on a trial, even if appellant had been advised that his guilty plea and deferred adjudication community supervision would constitute a conviction under federal immigration law as he claims he should have been. See Ex parte *Obi*, 446 S.W.3d 590, 596-601 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (finding no prejudice, even without "overwhelming" evidence of the

defendant's guilt, when the defendant raised a purported defense for the first time in the writ proceeding, not before or while he pled guilty; when there was no evidence that the defendant did or said anything to express that his immigration status was his paramount concern, despite that he had received multiple admonishments about adverse immigration consequences by defense counsel and the trial court; and when the risks of conviction at trial outweighed the benefits of the plea deal); *Murillo*, 389 S.W.3d at 932 (finding no prejudice when the record demonstrated that the State had a strong case against the defendant, the defendant failed to prove any factual or legal defenses to the charge, and the defendant would have faced the same immigration consequences if convicted at trial, in addition to a harsher criminal penalty); *Fassi*, 388 S.W.3d at 888 (finding no prejudice where the record overwhelmingly established the defendant's guilt, the defendant faced harsher criminal penalties if convicted—which was highly likely, that there was no evidence that any other plea deal was available to help the defendant avoid the same removal consequences of pleading guilty); see also *Ali*, 368 S.W.3d at 840 (observing that overwhelming evidence of guilt meant that the defendant's conviction was "virtually certain," and that by rejecting the plea deal, the defendant "would have risked the same deportation consequences and, in addition, could have been sentenced to up to ten years in TDCJ.").

Accordingly, appellant failed to establish prejudice under the second prong of Strickland, and the trial court did not abuse its discretion by denying appellant's application for a writ of habeas corpus on that basis, as well. Appellant's first point of error should be overruled.

**Counterpoint #2** Trial court's failure to orally admonish Appellant's about the immigration consequences of a guilty plea resulted in harmless error.

Appellant was aware of the immigration consequences of his plea, the trial court's failure to orally admonish Appellant of the exact same admonishments Appellant's trial court counsel admonished Appellant of on the record resulted in harmless error.

### CODE OF CRIMINAL PROCEDURE ARTICLE 23.16

Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law. TEX.CODE CRIM. PROC. ANN. art. 23.16(a)(4). In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, **unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.** TEX.CODE CRIM. PROC. ANN. art. 23.16(c).

### STANDARD OF REVIEW

A trial court's admonitions to and inquiries of a defendant prior to his plea of guilty serve to protect several constitutional rights. Anderson v. State, 182 S.W.3d 914, 917-18 (Tex.Crim.App.2006). They assure the court that the defendant's waiver of these rights in entering a guilty plea comports with due process, that is, the waiver was made voluntarily and with knowledge of the consequences of the plea. Article 26.13 is designed to provide these constitutional assurances. Carranza v. State, 980 S.W.2d 653, 656 (Tex.Crim.App.1998). The

Article 26.13 admonitions, however, are not themselves constitutionally required. Id. When conducting a non-constitutional harm analysis, an appellate court considers the entire record to determine whether it has a fair assurance that appellant's decision to plead guilty would not have changed if the trial court had admonished appellant about the adverse immigration consequences that the plea could produce, in accordance with Tex. Code Crim. Proc. Ann. art. 26.13(a)(4). In the "fair assurance" analysis, the appellate court considers the following three issues: (1) appellant's citizenship and immigration status; (2) whether appellant knew the consequences of his plea; and (3) the strength of the evidence of appellant's guilt. Rodriguez v. State, 425 S.W.3d 655, 664 (Tex. App. Houston 14th Dist. 2014) To warrant reversal, the record must support an inference that the defendant did not know the consequences of his plea. *Burnett v. State*, 88 S.W.3d at 638 (Tex. Crim. App. 2002).

It is agreed by both Appellant and Appellee that Appellant is not a citizen of the United States and is in this country illegally. There is also no argument from the state the State that that the trial court judge did not orally admonish Appellant of the immigration consequences of his plea. However, such oral admonishments were unnecessary; Appellant's trial court counsel called Appellant to the witness stand, with use of an interpreter, admonished Appellant of the immigration risks of his plea. (CR 1:72)  Appellant's counsel asked not one but three questions regarding Appellant's understanding of the immigration consequences of his plea; this level of admonishment goes above and beyond level of substantial compliance that the trial court would be required to meet when admonishing Appellant.  It was unnecessary for the trial court to repeat to Appellant the exact same or substantially similar questions that Appellant's trial court counsel already asked of Appellant concerning his immigration status and the effects of this plea on his immigration status. Furthermore, with the aid of his interpreter, Appellant signed the necessary

plea papers prior to the plea hearing, such plea papers were then notarized.  These plea papers state plainly, "I understand that if I am not a citizen of the United States that my plea may result in deportation, exclusion of admission to the country, or denial of naturalization under federal law." (C.R. 1:11)  Appellant could not be more advised of the immigration consequences of his plea than what he was.

Evidence of Appellant's guilt:

With this being a plea and being limited to the court's record it is difficult lay out all the available evidence of Appellant's guilt.  Appellant plead guilty to cause number 3065 on February 26, 2001. (R.R. 1:14)   When taken on cross examination during Appellant's plea hearing, Appellant was asked if he had been over the indictment with his attorney and if everything in that indictment was true and correct, both questions the Appellant responded yes. (C.R. 1:73)  In Appellant's affidavit concerning his feelings that he was not advised of the immigration consequences of his plea, Appellant never stated that he was not guilty of this crime. (R.R. 1:53-55) Lastly, Appellant was asked if there was anything that he did not understand and if he had any questions, the Appellant stated that he understood what was going on and that he did not have any questions. (C.R. 1:71) With the limited record that is available, which is typical for the plea of guilty that took place, Appellant establishes fully that he is guilty of this crime. At no point is there any evidence Appellant did not commit this crime. Only after deportation proceedings began did Appellant have any reservations about his original plea of guilty.

## *CONCLUSION AND PRAYER*

For the foregoing reasons, the State respectfully submits that this trial court properly denied Appellant's application for Writ of Habeas Corpus because Appellant failed to satisfy either prong of the Strickland Test for ineffective assistance of counsel and the court met all guidelines for admonishments for Appellant. Thus the State respectfully prays that this Court will overrule Appellant's two points of error, and will affirm the trial court's ruling to deny Appellant's requested writ relief.

Respectfully Submitted,

DAVID M. GREEN
69TH DISTRICT ATTORNEY
MOORE COUNTY, TEXAS


/S/ Larry Fadler_____
LARRY FADLER
SBN 24080125
ASSISTANT DISTRICT ATTORNEY
69TH DISTRICT ATTORNEY'S OFFICE
715 Dumas Ave., RM #304
Dumas, Texas 79015
(806)935-5654
(806)934-2155(fax)

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing State's Brief was served upon James Wooldrige, Attorney for Appellant (Efrain Martinez), *via electronic mail* to James Wooldridge j.e.wooldridge@att.net, on this the 20th day of October, 2015.

/S/ Larry Fadler _____
Larry Fadler

## *CERTIFICATE OF COMPLIANCE*

I certify that, according to the word count feature on Microsoft Word program, this document contains 4,975 words.

/S/ Larry Fadler _____
Larry Fadler